Luisa Lebrón Santiago, etc., recurrentes, *v.* El Registrador de la Propiedad de Humacao, recurrido.

Núm. 1133.—*Sometido:* Diciembre 17, 1943.  *Resuelto:* Marzo 31, 1944.

*Domínguez & Domínguez,* abogados de los recurrentes; el registrador recurrido compareció por escrito.

Eʟ Juez Presidente Señor Travieso emitió la opinión del tribunal.

La Corte de Distrito de Guayama, por resolución de fecha 25 de septiembre de 1931, declaró únicos y universales herederos de Francisco Tomás Vich, quien había fallecido . *ab intestato* el 14 de abril de 1931, a sus cinco hijos y a su viuda, Luisa Lebrón Santiago, en la cuota legal de usufructo.

Consistía el caudal hereditario de cuatro fincas rústicas en el barrio Guardarraya, de Patillas, P. R. Dos de estas fincas, una de cuatro cuerdas y la otra de una, descritas bajo las letras C y D en la escritura, habían sido adquiridas por Francisco Tomás Vich siendo soltero.

Previa autorización judicial, dichos menores, representados por su madre, celebraron un contrato de permuta con Félix Ramos Rivera entregando a éste las mencionadas fincas rústicas C y D y recibiendo en cambio una finca urbana consistente en una casa de madera ubicada en solar del Municipio de Maunabo. La transacción se elevó a escritura pública y ésta fué inscrita en cuanto a dicha finca urbana en el Registro de la Propiedad de Humacao, el 13 de octubre de 1943.

Al procederse a la partición de la herencia del finado Francisco Tomás Vich, la Corte de Distrito de Guayama, por resolución de 16 de septiembre de 1941, nombró defensor judicial de los herederos menores de edad a José Lebrón, abuelo materno de éstos, por haber intereses encontrados entre dichos menores y su señora madre, Luisa Lebrón Santiago. Cumplido este requisito, se llevó a efecto el acto de la partición de la herencia, concurriendo al acto la viuda, por sí y como apoderada general de su hijo mayor de

edad Francisco Tomás Lebrón; Dionisia Tomás Lebrón, menor de edad, emancipada por matrimonio, asistida de su esposo; las menores Guillermina, Eva y Luisa Tomás Lebrón; José Lebrón, abuelo materno y defensor judicial de las cuatro menores; y el Fiscal de Distrito de Guayama.

Los bienes objeto de la partición consistían de varias fincas rústicas adquiridas por el causante durante su matrimonio con Luisa Lebrón Santiago y de la finca urbana situada en el pueblo de Maunabo a que ya hemos hecho referencia. En las operaciones particionales, aprobadas por la corte, se adjudicó a la viuda la finca urbana en el pueblo de Maunabo, para el pago de bajas.

Posteriormente, al ser presentada en el Registro de la Propiedad de Humacao la escritura de partición para la inscripción de la finca urbana a favor de Luisa Lebrón Santiago, el registrador denegó la inscripción por nota de fecha 3 de noviembre de 1943, que lee como sigue:

"Denegada la inscripción del precedente documento que es copia de las operaciones particionales del caudal del finado don Francisco Tomás Vich en el expediente civil número 2125 de la Corte de Distrito de Guayama con vista de otros documentos, y especialmente de copia de la escritura número 15 sobre permuta y dación en pago, otorgada en Guayama el 11 de febrero de 1933 ante el notario Celestino Domínguez Rubio, en cuanto a la adjudicación que para pago de bajas se hace a doña Luisa Lebrón Santiago de la finca urbana descrita bajo la letra 'E', única que corresponde a este Registro, por los siguientes fundamentos:

" (1) Porque a pesar de disponer el artículo 160 del Código Civil, Ed. de 1930 que el nombramiento de un defensor judicial ha de hacerse en el caso de hijos *no emancipados* que tengan en algún asunto un interés opuesto a el de sus padres, siendo Dionisia Tomás Lebrón menor de edad y emancipada por matrimonio concurrió a la partición asistida de su esposo y del mismo defensor judicial que fué nombrado por la corte para los demás menores, y no de una de las personas que señala el artículo 237 de dicho código en relación con el artículo 232 del mismo cuerpo legal.

" (2) Porque al ser adquirida dicha finca por los menores Francisco, Dionisia, Guillermo, Eva y Luisa Tomás Lebrón, hijos de la

citada doña Luisa Lebrón Santiago por permuta hecha a don Félix Rivera Ramos de dos fincas privativas del causante don Francisco Tomás Vich que habían heredado de éste dichos menores, dicha finca urbana fué objeto de liquidación entre sus condueños habiendo la citada doña Luisa Lebrón Santiago, previa autorización judicial, renunciado expresamente a favor del permutante a su derecho de usufructo, único interés que tenía sobre las fincas dadas en permuta y habiendo hecho constar que no existían gananciales con respecto a las mismas, pero que de existir expresamente los renunciaba a favor de dicho permutante, habiéndose convenido además que la finca adquirida en permuta pasaba a ser privativa de los menores, con cuyo carácter jurídico figura ahora inscrita en el Registro, por lo que dicha finca no podía ser objeto de partición ni adjudicarse para pago de bajas a una persona que ni era ya condueña de la finca ni tenía interés alguno sobre ella ya que a juicio de este Registrador lo único que podía hacerse en la partición con respecto a la finca adquirida en permuta era abonarle su valor a los menores a quienes ya se había adjudicado en carácter privativo; siendo de aplicación lo dispuesto en los artículos 409, 1021 y último párrafo del artículo 1030 del Código Civil de Puerto Rico, Ed. de 1930 y por analogía lo dispuesto en los artículos 1001 y 1002 del mismo código y los artículos del 600 al 605 del Código de Enjuiciamiento Civil, ed. de 1933; y

''(3) Porque siendo dicha finca letra 'E' exclusiva de los menores antedichos, el hecho de adjudicársela a la madre y darles a ellos en cambio un condominio de lo que por ganancial correspondía a la madre en otra finca equivale a una permuta y estando interesados menores no se ha obtenido para ello la *previa* autorización judicial que determinan los artículos 614, 615 y 616 del Código de Enjuiciamiento Civil, Ed. de 1933, sin que la aprobación *a posteriori* por una corte de distrito de un cuaderno particional pueda, a juicio de este Registrador, tener el alcance (sic) de la *previa* autorización judicial que requiere la ley en casos de permutas de bienes de menores. Se ha tomado anotación preventiva por 120 días a favor de doña Luisa Lebrón Santiago al folio 28 vuelto del tomo 8 de Maunabo, finca número 400, anotación letra 'A'. Humacao, Puerto Rico, a 3 de noviembre de 1943. (firmado) Guillermo Estrella, Registrador.''

El primer fundamento de denegatoria del registrador consiste en que la comparecencia de la menor emancipada

por matrimonio Dionisia Tomás Lebrón al acto de la partición, no quedó perfeccionada por cuanto era necesaria la asistencia de una de las personas que señala el artículo 237 del Código Civil (ed. 1930).

Es de notar que se trata de un caso en el que existen intereses encontrados entre los herederos menores de edad y su señora madre, Luisa Lebrón Santiago. Por esta razón la Corte de Distrito de Guayama, siguiendo lo preceptuado por el artículo 160 del Código Civil nombró un defensor a dichos menores. Pero es el caso que según la letra de dicho artículo el mismo es de aplicación únicamente a los casos de menores no emancipados y entre los menores hijos de Luisa Lebrón Santiago estaba Dionisia Tomás Lebrón quien se hallaba emancipada por razón de matrimonio, y compareció al acto de la partición asistida de su esposo y del defensor judicial nombrado por la corte a todos los menores. Así, siendo el artículo 160, supra, de aplicación a los casos de menores no emancipados, alega el Registrador recurrido en su nota, que no se cumplió con la ley al nombrársele un defensor judicial a Dionisia Tomás Lebrón ya que se trataba de una menor emancipada por matrimonio.

No existe en el Código ninguna disposición relativa al caso de menores emancipados, cuando éstos tengan intereses encontrados con los de sus padres. El único artículo que trata sobre esta cuestión es el artículo 160 y, como ya hemos dicho antes, es de aplicación expresa a los casos de menores no emancipados. ¿Se trata, pues, de una omisión del legislador? Veamos.

El artículo 237, citado por el registrador, fué tomado del artículo 317 del Código Español, pero en nuestro código aparece bajo el capítulo que trata de la emancipación por concesión de los padres, mientras que en el Código Español es de aplicación general a todos los emancipados que hayan cumplido dieciocho años sin llegar a la mayor edad. (Man-

resa, "Comentarios al Código Civil Español," Tomo II, Ed. 1925, pág. 733.)

Sin embargo, en nuestro Código, el artículo 239, que también fué tomado del artículo 317 del español, con el que concuerda en parte, se hace exclusivamente aplicable a los casos de menores emancipados por razón de matrimonio. Así, creemos que es éste y no el artículo 237, como sostiene el Registrador, el de aplicación al caso de autos. Dicho artículo lee como sigue:

"Artículo 239.—El menor, sea varón o hembra, queda de derecho emancipado por el matrimonio.

"No obstante, para enajenar o hipotecar los bienes inmuebles o tomar dinero a préstamo, necesitará el menor emancipado por razón del matrimonio el consentimiento de su padre, en su defecto, el de su madre, y, en su caso, el de su tutor."

En su forma es casi igual al artículo 237, sin embargo existen entre ambos algunas diferencias de fondo que saltan a la vista. Dicho artículo 237, prescribe lo siguiente:

"Artículo 237.—La emancipación habilita al menor para regir su persona y bienes como si fuera mayor; pero hasta que llegare a la mayor edad no podrá el emancipado contraer promesa u obligación alguna que exceda del importe de sus rentas por un año. Tampoco podrá gravar ni vender bienes inmuebles suyos sin consentimiento de su padre, en defecto de éste, sin el de su madre, y, en su caso, sin el de su tutor.

"Tampoco podrá comparecer en juicio sin la asistencia de dichas personas."

Como se ve, el artículo 237 permite al menor emancipado por concesión de los padres, contraer obligaciones o promesas sin el consentimiento de éstos o de su tutor, siempre que las mismas no excedan del importe de sus rentas por un año; el artículo 239 no le concede expresamente esta facultad al emancipado por matrimonio. En cambio, el artículo 237 le prohibe comparecer en juicio sin la asistencia de las personas mencionadas al emancipado por concesión de los

padres, mientras que, aunque el artículo 239 nada dice en cuanto a este extremo, el 240 dice que "el menor emancipado por razón de matrimonio puede comparecer en las cortes de distrito representando sus derechos en los casos de ley." Es de notar que ambas cláusulas no existen en el artículo 317 del Código Civil Español.

Vistas las diferencias entre ambos artículos y creyendo que el de aplicación al caso de autos es el artículo 239 procedemos a analizar la cuestión planteada por el Registrador en su nota. ¿Era necesario que la menor emancipada por matrimonio compareciera al acto de la partición asistida de alguna de las personas que prescribe el artículo 239, que son las mismas que exige el artículo 237 citado por el registrador? Ya hemos visto que aparentemente existe una omisión en el código en cuanto al caso de un menor emancipado cuando en algún asunto existen intereses opuestos a los de sus padres. Manresa se ocupa de esta cuestión en sus "Comentarios al Código Civil Español", Tomo II, Ed. 1925, pág. 56 *in fine,* en donde, comentando el artículo 165 del Código Español del cual es equivalente el artículo 160 del nuestro dice:

"El artículo 165 al establecer el cargo de defensor, se refiere expresamente a los hijos no emancipados. La emancipación habilita al menor para regir su persona y bienes como si fuese mayor de edad; ya no necesita, por regla general, la intervención de una tercera persona que complete su personalidad y le defienda. Pero hay actos que aun no puede realizar por sí solo, como la enajenación de inmuebles, y en este caso la ley exige el consentimiento de su padre, en defecto de éste de su madre, y a falta de ambos de su tutor. Cuando los padres tienen interés opuesto al de sus hijos emancipados; ¿deberá intervenir un tutor como si aquéllos no existiesen, o habrá de nombrárseles un defensor judicial? Propiamente el caso no se halla resuelto en el artículo 165, ni en el 317: no en el primero, porque el defensor judicial sólo se da a los hijos no emancipados; no en el segundo, porque el tutor interviene a falta de padre y madre."

Y más adelante, al comentar el artículo 317 del Código Civil Español, equivalente a los artículos 237 y 239 del nuestro dice este autor, a la página 733:

"... es sabido que aquélla (la emancipación por matrimonio, por concesión del padre o madre o judicial) produce en el menor emancipado un estado jurídico de verdadera capacidad limitada, estado intermedio en el cual el menor posee en cierto grado el ejercicio de sus derechos civiles, sin llegar a la plenitud de ese ejercicio." (Paréntesis nuestro.)

Y continúa diciendo este autor, a las págs. 746, y siguiente:

"Pero si el menor estaba sujeto a la patria potestad al ser emancipado, y después fallecen o se incapacitan el padre y la madre, como carece de tutor, será preciso que se habilite de él cuando tenga que celebrar alguno de los actos o contratos en que necesita de su consentimiento . . ."

"Tenemos, pues, por indudable que para el caso de que se trata no puede constituirse legalmente la tutela ordinaria, compuesta de tutor, protutor y consejo de familia, y que ha de nombrarse un tutor especial, cuyas facultades están limitadas a dar el consentimiento al menor emancipado, para suplir su falta de capacidad en el acto o contrato en que la ley exige ese requisito.

"No se determina en este lugar la persona a quien haya de conferirse ese cargo de tutor especial, ni por quién ha de ser nombrado; pero como es regla de recta interpretación que lo dispuesto en una ley o código para un caso, es aplicable a los demás casos análogos, cuando nada se dispone en contrario, encontramos la solución en el Artículo 165. El *defensor* que, según dicho artículo, ha de nombrarse al menor, ejerce funciones análogas a las del tutor de que tratamos, puesto que uno y otro tienen en juicio y fuera de él la representación del menor en un asunto determinado. Por consiguiente, según lo que en el mismo artículo se ordena, y es de sentido común, deberá conferirse el nombramiento al pariente del menor, a quien en su caso, correspondería la tutela legítima, y a falta de éste, a otro pariente o a un extraño. Según el artículo 211, la tutela legítima corresponde a los abuelos y hermanos del menor, por el orden que en él se determina: ¿quién con más celo e interés podría desempeñar el cargo? Y el nombramiento se hará por el juez de primera instancia a petición del mismo menor como se ordena en el citado artículo 165, por los trámites establecidos en la

ley de enjuiciamiento civil para el de curadores para pleitos, que es el más adecuado, sin prestar fianza, porque ese tutor nada tiene que administrar, ni tampoco ha de recibir en su caso el precio de la venta, pues ha de limitarse a autorizar el acto dando su consentimiento, si lo cree útil o necesario para el menor.''

Y a la página 748 dice:

''Excusado parece advertir que además del consentimiento del padre, madre o tutor, necesita la mujer casada menor de edad la licencia de su marido, conforme a los artículos 60 y 61, y como se ha dicho también en el comentario anterior.''

Estamos completamente de acuerdo con Manresa, y siendo de entera aplicación lo dicho por este autor a la situación planteada en este caso creemos que no se cometió error alguno en cuanto a la comparecencia de la menor. Es cierto que nuestra Legislatura ha variado en parte las limitaciones impuestas por el Código Civil Español a los menores emancipados por matrimonio, permitiéndoles comparecer en las cortes de distrito representando sus derechos (artículo 240, Código Civil, ed. 1930); y así también ha suprimido el consejo de familia, pero esto en nada afecta la aplicabilidad de lo dicho por Manresa al caso de autos. La menor compareció asistida de su esposo y de su defensor, y aunque éste fué nombrado para que representase a los menores en juicio y fuera de él, y Dionisia Tomás Lebrón, de acuerdo con lo dispuesto por el artículo 240, citado, no necesitaba quien la representase en juicio, bastaba que el defensor se limitara a representarla en aquellas cuestiones en que exigía la ley diese su consentimiento. La asistencia del esposo no era necesaria. Con la asistencia del defensor quedó establecida su capacidad y por tanto carece de base el primer fundamento de la denegatoria del registrador. Véase: *Sucesión de Jesús* v. *Sucesión Castro*, 62 D.P.R. 580.

En cuanto al hecho de si una partición es o no una enajenación, ya ha dicho en varias ocasiones este tribunal que ''la partición no es otra cosa que una enajenación entre

los herederos de la parte indeterminada que tienen en la herencia, por la parte determinada y específica que reciben a cambio de aquélla. *Del Rosario* v. *Rucabado,* 23 D.P.R. 473, 478; *Latorre* v. *Registrador,* 24 D.P.R. 200, *Ex parte Sotomayor,* 24 D.P.R. 185; *Aponte* v. *Registrador,* 30 D.P.R. 785; *Sosa* v. *Sosa* (1941), 58 D.P.R. 470, 476.

El segundo motivo de denegatoria del registrador se basa en que no puede ser objeto de liquidación en las operaciones particionales la finca urbana que, por permuta, pasó a ser propiedad exclusiva de los hijos de don Francisco Tomás Vich. Asimismo sostiene que dicha finca no podía ser adjudicada a la viuda para el pago de bajas por no ser ésta condueña de dicha finca ni tener interés alguno en ella.

La finca en cuestión, como ya hemos dicho antes, fué adquirida por los hijos del señor Tomás por permuta de todos los bienes privativos dejados por éste a su fallecimiento. Habiendo la viuda renunciado su cuota legal de usufructo sobre los mismos, dicha finca fué inscrita en el registro como propiedad exclusiva de dichos hijos. Dicho inmueble no fué objeto de la partición en sí (véase Escritura de Partición, pág. 10), pero le fué adjudicado a la viuda para el pago de bajas (Escritura de Partición, pág. 11), compensándose a los hijos el valor de dicho inmueble ($500) en una participación mayor en la finca de mayor cabida (21.528 cdas.) que se describe bajo la letra "A" en la escritura de partición (pág. 3, in fine), viniendo a reunirse toda su herencia paterna en una sola finca de la cual venían a ser dueños en su casi totalidad (18.888 cuerdas). (Véase pág. 12, escritura de partición).

La finca urbana inscrita a favor de los menores era parte de su herencia paterna, pues, aunque la habían adquirido por permuta, habían dado a cambio de la misma bienes de la herencia y éstos habían sido sustituídos por aquélla no perdiéndose por la permuta el carácter de hereditario de dichos bienes. Sobre esta cuestión ha dicho este tribunal, en el caso de *Vaquer* v. *Registrador,* (1942) 60 D.P.R. 722, a la página 727, citando a Manresa:

". . . Cambio de una finca por otra, de alhajas, de semovientes, etc., cuando el acto deba calificarse de permuta. Lo adquirido sustituye siempre a lo trasmitido, cualquiera que sea su valor."

También en dicho caso se cita el de *Cot* v. *Registrador*, 15 D.P.R. 482, "que se cita como autoridad en 31 C. J. 28, párrafo 1109, para sostener el siguiente texto:

" 'Propiedad que se recibe a cambio de otra propiedad, bien en comunidad o separada, como regla general adquiere el carácter de la propiedad por la cual se cambia.' "

Siendo un bien de la herencia, respondía dicha finca, con los otros bienes, heredados por los hijos, de las deudas que dichos herederos venían obligados a pagar. Así, de acuerdo con lo dispuesto por el artículo 605 del Código de Enjuiciamiento Civil, pudo haber sido adjudicada tanto a uno de los herederos, como a un tercero para el pago de bajas. El artículo citado dispone lo siguiente:

"Artículo 605.—Siempre que se verificase una partición de herencia, en la cual hubiese interesados menores de edad, o incapaces, si se adjudicaren bienes de la herencia en pago de deudas, a herederos, o extraños; deberá someterse a la aprobación de la corte de distrito competente, y si ésta, con audiencia del fiscal, quedare satisfecha de la certeza de la deuda y de que la adjudicación en pago de la misma es razonable y justa, podrá aprobar dicha adjudicación en pago, sin necesidad de la subasta pública."

De acuerdo con la letra de este artículo no importaba que la finca en cuestión fuese adjudicada para el pago de bajas a la madre o a un tercero, ya que podía haber sido adjudicada lo mismo a un heredero que a un extraño, para tal fin. Toda la partición fué hecha de acuerdo con el procedimiento prescrito por el citado artículo del enjuiciamiento civil quedando la corte satisfecha de la certeza de la deuda y de la razonabilidad y justicia de la adjudicación, así como también de que los derechos de los menores estuvieron en todo momento protegidos.

No vemos razón alguna para la denegatoria de inscripción del registrador por este segundo motivo. En repetidas

370

ocasiones ha dicho este tribunal que no entra dentro de las facultades conferidas a los registradores de la propiedad por la Ley Hipotecaria, la de revisar las cuestiones de hecho y de derecho en que se basan las resoluciones judiciales. *Suárez v. Registrador,* 35 D.P.R. 740; *Caballero v. Registrador,* 35 D.P.R. 617. Dicha facultad se extiende únicamente a calificar los documentos expedidos por la autoridad judicial en cuanto a si el juez era o no competente por razón de la materia, la naturaleza y efecto de la resolución, si ésta se dictó en el juicio correspondiente, si en él se observaron los trámites y preceptos esenciales para su validez y si el título contiene las circunstancias que requiere la Ley Hipotecaria para su inscripción. *Cintrón v. Registrador,* 35 D.P.R. 805; *Sucn. Trías v. Registrador,* 59 D.P.R. 460.

En cuanto al tercer motivo de denegatoria, tampoco tiene razón el Registrador. Según el artículo 605 del Código de Enjuiciamiento Civil no es necesario que se siga el procedimiento prescrito por dicho código para la enajenación de bienes de menores, en los casos de partición de herencia en que hay menores envueltos. Y aun en el caso de que la adjudicación para pago de bajas a la viuda de la finca propiedad exclusiva de los hijos, entre los cuales había menores, se considere una permuta, la aprobación por la corte de dicha operación venía a ser la previa autorización judicial de que nos hablan los artículos 614, 615 y 616 del Código de Enjuiciamiento Civil.

*Creemos debe revocarse en su totalidad la nota recurrida.*